**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Jane Yellowman, | No. CV-24-08014-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Patricia Jane Yellowman seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under 42 U.S.C §§ 416(i), 423(d), and 1382c(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 301-2113. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, this Court affirms the Commissioner's decision.

## I.  BACKGROUND

Plaintiff was born in August 1971. (Doc. 10-4 at 2). Plaintiff does not have a high school education. (Doc. 10-3 at 40). Her prior job history includes housekeeping and arts and crafts jewelry solicitor. (Doc. 10-9 at 5-7). Plaintiff has the following severe impairments: lumbar spine degenerative disc disease, residuals of a total knee arthroplasty, obesity, and depression. (Doc. 10-3 at 20). Plaintiff also suffers from chronic daily headaches, diabetes, and asthma. (*Id.*).

On December 22, 2020, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning July 30, 2018. (Doc. 14 at 1). The Administration denied Plaintiff's initial claims on August 6, 2021 and upon reconsideration on July 28, 2022. On May 2, 2023, Plaintiff appeared telephonically with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. (Doc. 10-3 at 17). On June 14, 2023, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. (Doc. 10-3 at 27). The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. (Doc. 10-3 at 2). On January 25, 2024, Plaintiff sought review by this Court. (Doc. 1).

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Claims that are not actually argued in an appellant's opening brief are not considered on appeal. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). "[O]nly issues [that] are argued specifically and distinctly in a party's opening brief" are reviewed. *Id.* (internal quotation marks omitted).

A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or contains legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)). The court considers the record as a whole, taking as relevant all evidence that a "reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). In determining whether substantial evidence supports a decision, the court "may not affirm simply by isolating a specific quantum of supporting evidence." *Id*. (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.2006)). Generally, when the evidence is susceptible to more than one rational interpretation, the court "must uphold the ALJ's findings if they are supported

by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the standard of review is 'highly deferential.'" *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).

## III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).[1]

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. (Doc. 10-3 at 19). She has not engaged in substantial gainful activity since August 15, 2021, the amended alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar spine degenerative disc disease, residuals of a total knee arthroplasty, obesity, and depression. (*Id.* at 20). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following exceptions: Plaintiff can stand or walk for a total of six hours in an eight-hour workday; she can sit for six hours in an eight-hour workday; Plaintiff is occasionally able to balance, stoop, kneel, crouch, crawl, or

---

[1] At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *See id*. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

climb; she must avoid concentrated exposure to fumes, odors, dust, mist, gases, and poor ventilation; and she must avoid moving mechanical parts and unprotected heights. (*Id.* at 23). The ALJ also found that Plaintiff can understand, remember, carry out simple instructions, use judgment to make simple work-related decisions, perform occasional production rate work, and tolerate occasional changes in the work setting. (*Id.*). Further, the ALJ found that Plaintiff is able to perform her past relevant work as a solicitor, which does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (*Id.* at 26)

## IV.  ANALYSIS

### A.  The ALJ Adequately Developed The Record

Plaintiff asserts that the ALJ was required to develop the record because the record lacked opinion evidence assessing Plaintiff's limitations. (Doc. 14 at 12).

Generally, claimants are responsible for providing the evidence ALJs use to make a residual functional capacity determination. 20 C.F.R. § 404.1545(a)(3); see also *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."). However, ALJs have a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even when the claimant is represented by counsel. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1545(a)(3) (ALJs "are responsible for developing [the claimant's] complete medical history . . . and making every reasonable effort to help" the claimant get medical reports.). This duty to develop the record is triggered by "ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, the ALJ had no duty to further develop the record because there was neither ambiguous evidence nor an inadequate record. *See id.* Plaintiff argues that the ALJ should have developed the record with a consultative examination or medical expert testimony. (Doc. 14 at 10). Indeed, ALJs consider medical expert testimony; however, "ALJs need

not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." *Bufkin v. Saul*, 836 Fed.Appx. 578, 579 (9th Cir. 2021). Further, "there is not an inherent persuasiveness to evidence from government consultants over a claimant's own medical sources, and vice versa." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (cleaned up).

Here, disability determination services ("DDS") physicians consulted on the case and issued reports in 2021 and 2022 about Plaintiff's abilities, but both physicians determined there was insufficient evidence in the record to draw any conclusions. (Doc. 10-4 at 4, 23, 25). The DDS physician in August 2021 wrote that she only had medical evidence from September 2017 to October 2019, despite several attempts to get updated medical records from Plaintiff. (Doc. 10-4 at 4). The DDS physician in July 2022 had no records available after December 2021 to assess function, despite requests for activities of daily living and other functional information from Plaintiff. (Doc. 10-4 at 23).

While the record may have been inadequate for the DDS physicians, the ALJ benefited from two additional years of evidence in making his determination. Specifically, Plaintiff submitted medical evidence from 2022 and 2023 to the ALJ, which the ALJ considered in his review of Plaintiff's medical record. (Doc. 10-3 at 20-26). These records include reports from after Plaintiff's September 2021 knee surgery: in August 2022, Plaintiff consistently walked about half a mile per day and "feels much happier" than she was before, (Doc. 11-9 at 4); in December 2022, Plaintiff had persistent left knee pain but minimal right knee pain, controlled back pain, and controlled depression, (Doc. 11-9 at 11); and, in March 2023, Plaintiff sought care for acute exacerbation of chronic back pain which the physician attempted to treat with nonnarcotic pain medications, (Doc. 11-10 at 7). Further, the ALJ examined Plaintiff at her oral hearing, during which she discussed her symptoms, treatment, functional abilities, and activities of daily living. (Doc. 10-3 at 40-48). Because of this additional evidence, in conjunction with the medical record reviewed by the DDS physicians, the record was sufficient for the ALJ to make a residual functional capacity determination, and the ALJ had no duty to develop the record further.

### B.     The RFC Determination is Supported by Substantial Evidence

Plaintiff alleges the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence because the ALJ improperly interpreted raw medical evidence and relied upon his own lay interpretation rather than medical opinion evidence. (Doc. 14 at 9).

An RFC finding involves a detailed assessment of how a claimant's medical impairments affect her ability to work.  20 C.F.R. § 404.1545(a)(1).  In determining a claimant's RFC, the ALJ "must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006) (emphasis in original) (internal quotations omitted).  The ALJ's decision must be supported by substantial evidence, which is more than a mere scintilla but less than a preponderance." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

Plaintiff is right that "an ALJ cannot properly rely on the ALJ's own lay knowledge to make medical interpretations of examination results or to determine the severity of medically determinable impairments." *Reagan G. v. Kijakazi*, No. CV-21-1716, 2022 WL 2092542, at *2 (C.D. Cal. June 8, 2022); *see also Rivera v. Berryhill*, No. CV-16-791, 2017 WL 5054656, at *4 (C.D. Cal. Oct. 31, 2017) ("[A]n ALJ may not act as his own medical expert as he is 'simply not qualified to interpret raw medical data in functional terms.'") (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)).  And, as Plaintiff points out, the ALJ did cite directly to medical findings contained in Plaintiff's MRI scans to demonstrate the DDS physician opinions were inconsistent with Plaintiff's medical record. (Doc. 19 at 3; Doc. 10-3 at 25).

The ALJ, however, based his RFC finding on substantial evidence.  Specifically, he relied on medical records from after Plaintiff's right knee surgery, exceeding the "mere scintilla" required by the substantial evidence standard. *See Ord.*, 495 F.3d at 630.  The ALJ reviewed records from a November 2021 appointment, during which claimant still reported some knee pain following her September 2021 surgery but had good ranges of

knee motion, her right knee films showed normal soft tissues with no swelling or evidence of bony lesions, and her patella femoral implant was well-fitted and appropriately sized. (Doc. 10-3 at 24; Doc. 11-8 at 52-55). In that same report, the doctor noted that he "believe[d] that this patient's pain [was] from normal surgical healing and lack of physical therapy." (Doc. 11-8 at 55). The ALJ also considered a December 2022 medical report which noted that, during Plaintiff's visit, "[she] stated her right knee pain was minimal after surgery, that her back pain was controlled with pain medication, . . . and that her left knee pain was relieved well with medication." (Doc. 10-3 at 24; Doc. 11-9 at 11). The ALJ also considered that Plaintiff "denied major back pain," (*Id.*), and that her "low back pain was stable." (Doc. 10-3 at 24). Finally, the ALJ accounted for medical records from August 2021 to March 2023, which revealed "right knee effusion/tenderness, with intact orientation, a pleasant mood, intact memory, normal lower extremity coordination, intact feet sensation, normal lower extremity motor function and strength, well-aligned legs, full ranges of lower extremity motions, and stable right leg joints." (Doc. 10-3 at 25).

While the ALJ acknowledged a February 2023 medical report in which left knee radiographs indicated severe osteoarthritis, with no significant joint space narrowing or osteophyte formation, (Doc. 10-3 at 24), there is no evidence Plaintiff's left knee pain was disabling at Plaintiff's alleged onset date of August 15, 2021. Even so, in making his RFC finding, the ALJ limited claimant to light work with limitations and restrictions due, in part, to the effects of her knee disorders. (Doc. 10-3 at 25).

The ALJ's decision is supported by substantial evidence and is not based on legal error. As such, it is affirmed.

Accordingly,

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**.

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and terminate this case.

Dated this 10th day of March, 2025.

_____
G. Murray Snow
Senior United States District Judge